IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILLIAM R. TRICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 11-767-GMS |
| | ) | |
| LT. ERIC MALONEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

The plaintiff, William R. Trice ("Trice"), who proceeds *pro se* and has been granted leave to proceed without prepayment of fees, filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. Trice is currently confined at the James T. Vaughn Correctional Center in Smyrna, Delaware. Pending before the court is the motion for summary judgment of the defendants Lt. Eric Maloney ("Maloney") and Officer Earl K. Brode ("Brode") (together "the defendants") and Trice's opposition thereto. (D.I. 86.)

**I. FACTUAL AND PROCEDURAL BACKGROUND**

**A. Amended Complaint**

The amended complaint with exhibits (D.I. 8, 13) alleges that Maloney accused Trice of violating a no contact order imposed as a condition of release in Criminal Case No. 1004011070 that was pending in the Superior Court of the State of Delaware in and for Sussex County. Trice alleges that Maloney signed a false affidavit in police complaint No. 5510001652 (assigned Criminal Case No. 1006018519) that charged Trice with noncompliance with conditions of recognizance bond or conditions violation when Trice entered the property of Ronald Messick ("Messick") in violation of the no contact order that was issued by the Kent County Superior Court. Trice claims that the location he entered was not Messick's property. The amended

1

complaint alleges that, on June 30, 2010, Trice was arrested by Brode and taken into custody for violating the no contact order. Trice had been charged with several other crimes and, on March 22, 2011, he entered a *Robinson* plea to rape in the third degree, strangulation, and tampering with a witness. The remaining charges were *nolle prossed*, including the charge for violating the no contact order in Criminal No. 1006018579. *See Trice v. State*, 36 A.3d 351 (Del. 2012) (table decision); (D.I. 26, ex. Superior Court Criminal Docket Nos. 1004011070 and 1006018519.) Trice alleges that the defendants' actions violated his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and prohibited his access to liberty, property, and equal protection of Delaware laws which state that one cannot be ousted or excluded from one's home without due process of law. (D.I. 13.) He seeks compensatory damages.

### B. Facts Presented by the Parties

The April 16, 2010 "No-Contact Provisions/Conditions of Release/Order during Commitment in Lieu of Bail" issued as a result of Trice's arrest for arson and burglary states, as follows:

> You [Trice] are to have no contact, direct or indirect with Ronald R. Messick, Mary M. Szczytkowski ("Szczytkowski") 11 Rose Haven Drive (hereinafter the "Alleged Victim"), or with the alleged victim's property, residence, place of employment, school, church or at any other place. No direct or indirect contact means that you are not to be in the physical presence of the alleged victim. . . . You will at all times stay 100 or more yards away from the alleged victim, the alleged victim's residence and workplace.

(D.I. 85, A3, A18.)

The manufactured housing community known as Cozy Woods in which 11 Rose Haven Drive is located, is owned by Messick's Manufactured Housing Community LLC ("MMHC"). (*Id.* at A5.) The streets in the manufactured housing communities owned by MMHC are private

2

streets that belong to MMHC and are not maintained by the City of Harrington or the Delaware Department of Transportation. (*Id.*)

On June 20, 2010, Szczytkowski's father, Ivan Chapman ("Chapman"), saw Trice at 52 California Parkway, Harrington, Delaware, an address is located in Messick's Manufactured Housing Community. (*Id.* at A3-4.) Chapman lived next door to 52 California Parkway. (D.I. 85, A3.) Trice's mother, Mary J. Trice ("M. Trice") resides at 51 California Parkway and has leased the property since October 1994. (D.I. 92, B28.) According to M. Trice, her son shared the residence. (D.I. 93, ¶ 6.) Trice was at his mother's residence on June 20, 2010, when he waved and spoke to Chapman. (D.I. 85, A3; D.I. 92, B24.)

Szczytkowski contacted the Harrington Police Department to report what her father had seen. (*Id.*) Maloney interviewed Chapman and Szczytkowski and was advised there was a no contact order and that Trice was not allowed on Messick property. (*Id.*) Maloney confirmed the existence of the no contact order through the Delaware Criminal Justice Information System (*i.e.*, DELJIS). (*Id.*)

Maloney understood and believed that the manufactured home parks wherein Rose Haven Drive and California Parkway are located were owned by Messick. (*Id.* at A14.) He states that Rose Haven Drive and California Parkway are less than 100 yards apart. (*Id.*) Maloney applied for a warrant charging Trice with noncompliance with conditions of recognizance bond. (*Id.* at A13.) The affidavit in support of the warrant lists the location of the offense as 51 California Boulevard, Harrington, Delaware. (*Id.* at A3.) Maloney states that, at the time he submitted the documents to the Justice of the Peace Court, he believed the information contained therein was true. (*Id.* at A15.) On June 21, 2010, a Justice of the Peace at Justice of the Peace Court No. 2 issued a warrant for Trice's arrest. (*Id.* at A1.)

3

On June 23, 2010, Trice appeared at the Harrington Police Department, surrendered, and was processed by Brode. (D.I. 85, A16-17; D.I. 92, B5.) Upon his arrest, Trice stated that "he stopped by his mother's to get clothing . . . thought the no contact order only meant when the subjects are present . . . that because he went to his mother's house he thought it was OK." (D.I. 92, B35.) Trice was arraigned by videophone and released on $5,000 unsecured bond. (D.I. 85, A17, D.I. 92, B25.) The charges against Trice in criminal action No. 1006018519 were *nolle prossed* on their own merits and not as part of an omnibus plea agreement. (D.I. 92, B27.)

In Trice's declaration, he states that he was arrested because he entered the residence he shared with his mother who has a rental unit and she was in full possession of the property. (D.I. 92, Pl.'s decl. ¶¶ 4-5.) Trice states that the no contact order applies to Messick, Szczytkowski and solely to the property at 11 Rose Haven Drive in Harrington, Delaware. (*Id.* at ¶ 6.) He states that Maloney relied on Szczytkowski's statement who was not a witness and that Maloney distorted Chapman's statement and placed Trice at 52 California Parkway when he was at 51 California Parkway. (*Id.* at ¶ 10.) Trice states that the no contact order fails to address any property owned or divested by and through MMHC, that MMHC conducted business at a location 100 yards or greater from 51 California Parkway, and that Messick resided at an address 100 yards or greater from 51 California Parkway. (*Id.* at ¶¶ 11-13.)

The defendants move for summary judgment on the grounds that: (1) Maloney's affidavit in support of the application for an arrest warrant is presumptively valid; (2) Trice cannot provide specific proof of deliberate falsehood or of reckless disregard for the truth; (3) Brode merely processed Trice when Trice surrendered at the Harrington police station; (4) Brode complied with the terms of the warrant; and (5) the defendants have qualified immunity. Trice contends that there remain genuine issues of material fact and that the defendants are not entitled to qualified immunity.

4

## II. STANDARD OF REVIEW

The court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). However, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## III. DISCUSSION

### A. Arrest Warrant/False Arrest

Trice has sued Maloney for his role in obtaining the arrest warrant and Brode for arresting him. An arrest warrant issued by a judge does not, in itself, shield an officer from liability for false arrest. *See Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997). "A plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff

5

shows, by a preponderance of the evidence: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that such statements or omissions are material, or necessary, to the finding of probable cause.'" *Reedy v. Evanson,* 615 F.3d 197, 213 (3d Cir. 2010) (quoting *Wilson v. Russo,* 212 F.3d 781, 786-87 (3d Cir. 2000)). An omission in the warrant application is made with reckless disregard for the truth when an officer withholds a fact that a reasonable person would have known was the kind of thing the judge would want to know. *Wilson,* 212 F.3d at 788. An assertion is made with reckless disregard for the truth "when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Id.* (internal quotations and citation omitted).

Probable cause exists where there are "facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91 (1964). The court considers the facts available at the time of the alleged unlawful conduct, that is, when Maloney applied for the arrest warrant. *Sharrar v. Felsing,* 128 F.3d 810, 817-18 (3d Cir. 1997). Hence, the issue is whether, at the time he applied for the warrant, Maloney reasonably believed that Plaintiff had committed the crime in question. *See Dowling v. City of Philadelphia,* 855 F.2d 136, 141 (3d Cir. 1988).

The defendants argue that Maloney's affidavit in support of the application for the arrest warrant is presumptively valid and that Trice cannot provide specific proof of deliberate falsehood or reckless disregard for the truth. Trice responds that the defendants engaged in negligent and/or reckless intentional acts to prohibit his access to the property. He also argues that he shared his mother's domicile and that she maintained a leasehold over the property at

6

issue. The defendants argue that summary judgment is proper on behalf of Bode on the grounds that Bode merely did what the warrant commanded.

In the amended complaint, Trice alleges that Maloney published a sworn affidavit that contained fallacious information with the intention of placing Trice in the custody of the State of Delaware. Trice presents no evidence suggesting that Maloney's affidavit of probable cause contained either false statements or omissions of a material nature. Instead, Trice discusses his mother's lease and the provisions of the no contact order in positing his theory that he did not violate the provisions of the order. However, Trice's interpretation of the no contact order is not evidence that Maloney did not believe the statements in his affidavit to be true or that Maloney proceeded in reckless disregard of the truth. The evidence of record is that Maloney spoke to witnesses who identified Trice and indicated that Trice was present in an area prohibited by the no contact order, that Maloney verified there was a no contact order, and that Maloney had personal knowledge of the property owned by Messick. Trice did not refute these facts.

Trice seems to argue that the Maloney "distorted" the evidence by placing Trice at 52 California Parkway and not at 51 California Parkway. (*See* D.I. 92, Pl.'s decl., ¶ 10.) The court notes that Maloney's affidavit lists the location of the offense as 51 California and not 52 California. The affidavit also states that Chapman lived next door to 52 California when he saw and spoke to Trice. Authorities are not required to address all conflicting pieces of evidence or always accurately make determinations of credibility. *See Wright v. City of Philadelphia*, 409 F.3d 595, 603 (3d Cir. 2005). Police officers are instead entitled to draw reasonable inferences, based on their own personal knowledge and prior experience. *United States v. Ortiz*, 422 U.S. 891, 897 (1975). Regardless of whether the alleged violation occurred at 51 or 52 California, based upon his personal knowledge, Maloney considered both addresses as Messick properties

7

with regard to the no contact order, thus giving rise to the conclusion that Maloney's affidavit was supported by the evidence known to him at the time he applied for the arrest warrant.

In addition, "[a]n officer who has probable cause to arrest is not required to conduct further investigation for exculpatory evidence, or to pursue the possibility that the suspected offender is innocent." *Vassalo v. Timmoney*, 2001 WL 1243517, at *7 (E.D. Pa., Oct.15, 2001) (citations omitted). Even were the court to determine that Maloney was negligent in failing to investigate the details of the no contact order, negligent police work cannot form the basis of a constitutional claim. "The issue is not whether the information on which police officers base their request for an arrest warrant resulted from a professionally executed investigation; rather, the issue is whether the information would warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

Finally, while the question of probable cause in a section 1983 damage suit is one for the jury, a district court may conclude that probable cause existed as a matter of law if the evidence, viewed in the light most favorable to the plaintiff, could not reasonably support a finding that there was no probable cause. *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003) (citing *Mulvihill*, 113 F.3d at 401). In light of this standard, and even construing the facts in the light most favorable to Trice, the court finds there existed "facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense" sufficient for a probable cause finding. *Beck*, 379 U.S. at 91.

As discussed, probable cause existed for issuance of a warrant for Trice's arrest. Trice surrendered and Brode processed Trice and caused Trice to be arraigned by video phone. Considering the totality of the circumstances, including the facts stated in the affidavit of probable cause, the court concludes that no genuine issues of material fact exist as to whether

8

there was probable cause to arrest Trice. Therefore, the court will grant the defendants' motion for summary judgment.

## B. Qualified Immunity

The defendants also raise a qualified immunity defense. The doctrine of qualified immunity provides that certain officials, including police officers, performing "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right [ ] of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). The doctrine of qualified immunity provides not only a defense to liability, but immunity from suit. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

When analyzing qualified immunity claims for law enforcement officers' alleged violation of a constitutional right, the court may apply a two-step inquiry. *Pearson v. Callahan*, 555 U.S. 223 (2009) (holding that the court may but is no longer required to first determine whether the facts make out a violation of a constitutional right). In "order to survive summary judgment on grounds of qualified immunity, a plaintiff must: (1) allege violation of a valid legal right, and (2) demonstrate that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Abdullahi v. City of Madison*, 423 F.3d 763, 775 (7th Cir. 2005) (quoting *Saucier*, 533 U.S. at 201-02).

In the preceding analysis, the court determined that the defendants did not violate Trice's constitutional rights when an arrest warrant was obtained and Trice was arrested and, therefore, the court need not to address whether Trice's constitutional rights were clearly established. Assuming arguendo that the defendants did violate Trice's constitutional rights, they, nonetheless, would be entitled to qualified immunity because it would not have been clear to a reasonable officer that their actions violated Trice's constitutional rights given that (1) it was

9

reasonable to assume that Trice was in a location that appeared to be prohibited by the no contact order; (2) Maloney obtained an arrest warrant and, under the circumstances, could reasonably believe that there was probable cause for the issuance of the warrant; and (3) upon Trice's surrender, Brode executed the warrant in a constitutional fashion. In addition, it would not have been clear to a reasonable officer that he violated Trice's Fifth or Fourteenth Amendment rights in prohibiting Trice access to 51 California Parkway property given that it was reasonable to assume that the property was the subject of the no contact order. Thus the defendants' actions did not amount to a public taking or violate Trice's right to due process as he alleges.

For the above reasons, the court finds that qualified immunity applies to the defendants' actions. Therefore, the court will grant the defendants' motion for summary judgment.

## IV. CONCLUSION

For the above reasons, the court will grant the defendants' motions for summary judgment (D.I. 86).

An appropriate order will be entered.

July 20, 2015
Wilmington, Delaware

UNITED STATES DISTRICT JUDGE

10